UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:25-CV-00085-MEO-DCK

| | |
|---|---|
| ANTONELLI KESLER AND VIVIAN KESLER,<br><br>Plaintiffs,<br><br>v.<br><br>WAFFLE HOUSE, INC., AND MIDWEST WAFFLES, INC.,<br><br>Defendants. | <u>MEMORANDUM & ORDER</u> |

**THIS MATTER** is before the Court on Defendant Waffle House, Inc., and Midwest Waffles, Inc.'s Motion for Summary Judgment (Doc. No. 11) and Motion to Strike Plaintiffs' Response to Defendants' Requests for Admissions and Deem Requests for Admissions as Admitted (Doc. No. 12). Plaintiffs, who are represented by counsel, filed no response in opposition to Defendants' motions, nor did they move to withdraw or amend any admissions. For the reasons set forth below, the Court will grant the motions.

## I. BACKGROUND

This matter arises from an incident that occurred in the afternoon of July 22, 2022, at the Waffle House located at 706 Sullivan Road in Statesville, North Carolina. (Doc. No. 1-1 ¶ 3). Plaintiffs Antonelli Kesler ("Mr. Kesler") and his mother, Vivian Kesler ("Ms. Kesler"), allege they arrived at the Waffle House around 3:30 p.m., that Mr. Kesler parked in a marked handicap parking space in front of the Waffle House, and that he assisted 82-year-old Ms. Kesler, who used a wheelchair, into the Waffle

House via a ramp. *Id.* ¶¶ 22–24. The record reflects Plaintiffs parked in an area that was not a designated handicap parking spot. (Doc. No. 13-5 ¶ 1).[1]

Upon entering, Plaintiffs allege a cook named Anthony "Tony" Gibbs ("Gibbs") yelled at them, refused them service, and announced to the restaurant that they would not be served food, stating he did not want to serve them because they were disabled and had parked in the handicap space. (Doc. No. 1-1 ¶¶ 26–29). The record reflects that Gibbs asked Mr. Kesler to move the vehicle because it was parked in a high-traffic, unsafe area and at risk of being hit, and that both Plaintiffs were told it was a dangerous spot to park. (Doc. Nos. 13-5 ¶¶ 3–5; 13-6 ¶ 6). The record further reflects that Mr. Kesler swore at employees and accused Gibbs, who is African American, of being racist. Mr. Kesler also stated he was a former police officer and recorded video of employees, while Ms. Kesler apologized for her son's behavior and indicated she did not agree with his language and conduct. (Doc. No. 13-5 ¶¶ 6–10).

Plaintiffs allege Waffle House staff and patrons did not intervene and that Gibbs continued making disparaging comments about disabled customers, expressing disdain for Plaintiffs being in "his restaurant." (Doc. No. 1-1 ¶¶ 32–33). Plaintiffs allege an acting manager eventually acknowledged the situation and took their food order while another staff member prepared the food. *Id.* ¶ 31. Plaintiffs allege they were humiliated and visibly emotionally distraught and "forced to leave" the restaurant. *Id.* ¶ 34. The record reflects that the acting manager, Christina Garrett, removed Gibbs to the back to de-escalate the situation, personally cooked and served

[1] For the reasons explained below, the Court deems admitted the requests for admission cited herein.

Plaintiffs' food, reiterated the parking safety concern, gave a discount, and that Plaintiffs ate their meal, paid, and appeared satisfied when they left. (Doc. No. 13-6 at 6–7; Ex. B. to Pender Dec.).

On July 28, 2022, Mr. Kesler's wife, Tammy Kessler, submitted a customer complaint, alleging that employees discriminated against Mr. Kesler and Ms. Kesler during the July 22 visit, including that the cook said he would not cook their food unless they moved the car and that the acting manager later cooked and served their food around 3:30 p.m. (Doc. No. 13-6 at 4; Ex. A to Pender Dec.). Waffle House initiated an internal investigation, obtaining written statements from Garrett and Gibbs and reviewing video of the incident, and concluded there was no evidence of discriminatory service or violation of the customer discrimination policy; Waffle House communicated the findings and closed the complaint. (Doc. No. 13-6 ¶¶ 6–7; *id.* at 5).

Plaintiffs filed this action in Iredell County Superior Court on April 30, 2025, asserting claims for intentional infliction of emotional distress against both Defendants, negligent supervision against Midwest Waffles, Inc., violation of Title III of the Americans with Disabilities Act, and punitive damages. (Doc. No. 1-1). Only Mr. Kesler verified the Complaint; Ms. Kesler did not. *Id.* at 10. On July 2, 2025, the case was removed to federal court. (Doc. No. 1). On June 4, 2025, Defendants timely answered. (Doc. No. 5).

On Friday, September 19, 2025, Defendants served interrogatories, requests for production, and ten requests for admission by email on Plaintiffs' counsel. (Doc.

No. 13-1 at 6–7; Doc. No. 13-2 at 2–3). Plaintiffs failed to respond within thirty days. Defendants moved to compel on December 4, 2025. (Doc. No. 9). On January 5, 2026, Plaintiffs' counsel emailed handwritten responses. (Doc. No. 13-3). Neither Plaintiff nor counsel signed them. *Id.* The only signature on each document is defense counsel's, date included, carried over from the original requests. (Doc. No. 13-4 at 6; Doc. No. 13-5 at 2). Defendants withdrew their Motion to Compel after receiving late responses. (Doc. No. 10 at 1). Discovery closed on February 27, 2026. (Doc. No. 7). Defendants now move to deem the requests for admissions admitted and for summary judgment. Plaintiffs have not responded.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Constr. Co.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of

demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," summary judgment is warranted); *see also United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022) (same). "If the movant satisfies his initial burden to demonstrate 'an absence of evidence to support the nonmoving party's case,' the burden shifts to the nonmovant to 'present specific facts showing that there is a genuine issue for trial.'" *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 247–48). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). A verified complaint serves as an opposing affidavit to the extent its allegations rest on the verifying party's personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[S]tatements based

solely on information and belief do not satisfy the requirements of Rule 56." *Cottom v. Town of Seven Devils*, 30 F. App'x 230, 234 (4th Cir. 2002); *see* Fed. R. Civ. P. 56(c)(4). "And '[m]ere speculation by the non-moving party cannot create a genuine issue of material fact" sufficient to survive a motion for summary judgment. *Id.* (quoting *Cox v. Cnty. of Prince William,* 249 F.3d 295, 299 (4th Cir.2001).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *See Anderson*, 477 U.S. at 255. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Wright & Miller's Federal Practice & Procedure § 2728 (3d ed. 1998)).

Overall, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

### A. Requests for Admission and Interrogatories

At the outset, the Court must determine whether it should strike Plaintiffs'

responses to the requests for admission ("RFAs") and deem the RFAs admitted.[2] Under Rule 36(a)(3), a matter is admitted unless, within 30 days after service, the responding party serves a written answer or objection "signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

Defendants served the RFAs by email on Friday, September 19, 2025. (Doc. No. 13-2 at 3). Plaintiffs' period to respond ran through Monday, October 20, 2025. Fed. R. Civ. P. 6(a)(1)(C) (thirtieth day landed on a Sunday). On December 4, 2025, Defendants filed a motion to compel. (Doc. No. 9). Plaintiffs did not respond until January 5, 2026—seventy-seven days late. (Doc. No. 5). Plaintiffs' unsigned, grossly late "responses" do not satisfy Rule 36, and, absent a Rule 36(b) motion—which Plaintiffs did not file—the matters are conclusively established. *See Bailey v. Christian Broadcasting Network*, 483 F. App'x 808, 809 (4th Cir. 2012) (RFAs deemed admitted and "conclusively established" absent motion to withdraw). The Court therefore deems the RFAs admitted and will consider those admissions in the Rule 56 analysis. *See Adventis, Inc. v. Consolidated Prop. Holdings, Inc.*, 124 F. App'x 169, 173 (4th Cir. 2005) (Rule 36 admissions sufficient to support summary judgment).

Plaintiffs' untimely responses fail under Rule 36 for a second, independent reason: they are not "signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Indeed, Rule 26(g) requires that every discovery response must be signed by an attorney of record or by a party proceeding *pro se*. Fed. R. Civ. P. 26(g)(1). And when

---

[2] Defendants do not ask the Court to strike the untimely, unsigned responses to the interrogatories ("ROGs"). Nevertheless, the ROG answers suffer from the same defects as the RFA responses, and they are not verified under oath as required by Rule 33(b)(3), (5).

one is not, the court "must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2). Defendants identified the omission in their March 13, 2026 Motion to Strike. (Doc. No. 13 at 2, 6). Nevertheless, Plaintiffs have failed to supply a signature since being made aware of the deficiency. Accordingly, the Court grants Defendants' motion, strikes from the record Plaintiffs' untimely, unsigned January 5, 2026 RFA responses, and deems the RFAs admitted.[3]

### B. Effect of Plaintiffs' Failure to Respond

Next, the Court turns to the issue of Plaintiffs' failure to respond to Defendants' Motion for Summary Judgment. Plaintiffs' response to the Motion for Summary Judgment was due within fourteen days of electronic service, that is, by March 27, 2026. LCvR 7.1(e).[4] That deadline passed six months ago, and Plaintiffs have not responded to the Motion. Plaintiffs are represented by counsel, so no *Roseboro* order was required. *Cf. Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) (requiring such notice for *pro se* litigants).

When a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion," and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is

---

[3] These admissions have a limited practical effect—they merely establish where Plaintiffs did not park and how Mr. Kesler conducted himself. Each ruling below would be the same without them.

[4] Because service was made electronically, Rule 6(d) adds no time.

entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). Thus, the failure of a party to oppose a summary judgment motion "may leave uncontroverted those facts established by the motion," but the moving party must still show "that the uncontroverted facts entitle the party to a judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

For purposes of considering the motion before it, the Court accepts as undisputed those facts Defendants support with record evidence that nothing in the record contradicts. Where the record favors Plaintiffs—including Gibbs's admission that he refused to cook and the sworn allegations of the verified Complaint—the Court credits Plaintiffs' version. And on each element for which Plaintiffs carry the burden of proof, the question is whether anything in the record, verified Complaint included, would allow a reasonable jury to find in their favor.

### C. Defendants' Motion for Summary Judgment

This Court does not grant a motion for summary judgment simply because no one opposes it. Having examined the record in full, including the portions of Defendants' own exhibits that favor Plaintiffs, and for the reasons explained below, the Court finds that Plaintiffs' claim fails as a matter of law and even if it survived, Plaintiffs' lack standing to bring the ADA claim and it will be dismissed without prejudice. As to the claims for negligent supervision and intentional infliction of emotional distress, the Court concludes that no genuine dispute of material fact exists and that Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant Defendants' motion as to the claims for negligent supervision and

intentional infliction of emotional distress.

*1. Violation of Title III of the ADA*

Plaintiffs bring a claim for violation of Title III of the Americans with Disabilities Act (the "ADA"), which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For the reasons explained below, the Court concludes that this claim must be dismissed.

At the outset, the Court observes that Plaintiffs only request monetary damages. Title III authorizes only injunctive relief; monetary damages are not available in a private action under Title III. *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016); 42 U.S.C. § 12188(a)(2). Injunctive relief requires a real and immediate threat of future harm. *Thomas*, 841 F.3d at 683 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Thus, Plaintiffs fail to state a claim upon which relief can be granted.

Even if the Court read Plaintiffs' Complaint to request injunctive relief, which the Complaint does not, Plaintiffs do not present evidence of a likelihood of future harm. Standing to seek an injunction requires a real and immediate threat of future injury; past exposure to allegedly unlawful conduct or indefinite future intentions are not enough. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–05 (1983); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Two items in the record touch on Plaintiffs'

future relationship with the Waffle House—that Mr. Kesler "always" parks in the spot he parked in that day, suggesting past patronage (Doc. No. 13-6 at 4; Plaintiffs' Customer Service Report), and that Plaintiffs relive the trauma whenever they pass the restaurant. (Doc. No. 1-1 ¶ 47). Neither shows a concrete plan to return or that Plaintiffs would return but for ongoing discrimination.

Plaintiffs therefore fail to state a claim, and even if they requested proper relief, they lack standing to seek Title III relief. Accordingly, the Court will dismiss this count without prejudice.[5]

*2. Intentional Infliction of Emotional Distress*[6]

Under North Carolina law, intentional infliction of emotional distress ("IIED") requires extreme and outrageous conduct intended to cause, and that does cause, severe emotional distress. *See Guthrie v. Conroy*, 567 S.E.2d 403, 408 (N.C. App. 2002) (quoting *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992)). Conduct must exceed "mere insults, indignities, [and] threats," *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123 (N.C. App. 1986); *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. App. 2004). "Only when the conduct 'exceeds all bounds usually tolerated by decent society' and the conduct 'causes mental distress of a very serious kind' will liability be imposed on the defendant for the tort." *Frazier v. First*

[5] Having resolved the ADA claim on these grounds, the Court does not reach whether Plaintiff is disabled within the meaning of the ADA or whether the refusal to cook was "on the basis of disability."

[6] Having disposed of the only federal claim, the Court may decline to exercise supplemental jurisdiction once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court in its discretion will proceed to address the state-law claims.

*Union Nat. Bank*, 747 F. Supp. 1540, 1553 (W.D.N.C. 1990) (quoting *Stanback v. Stanback,* 254 S.E.2d 611 (N.C. 1979)); *see Pierce v. Atl. Grp., Inc.*, 724 S.E.2d 568, 577 (N.C. App. 2012).

The record, including deemed admissions, does not support extreme and outrageous conduct by Gibbs or any of Defendants' employees; rather, it establishes Gibbs' stated safety concern about where Plaintiffs parked, the acting manager's intervention, and service of Plaintiffs' food. The RFAs deemed admitted reflect that Mr. Kesler swore at employees, refused to move his vehicle, and accused Gibbs of racism, and that Ms. Kesler disagreed and apologized. Even crediting Plaintiffs' allegations that Gibbs used harsh words, such conduct does not meet the "utterly intolerable" standard. *See McEntire v. Johnson*, No. 1:12-CV-00327-MR-DLH, 2013 WL 5727413, at *4 (W.D.N.C. Oct. 22, 2013) (allegations of "unspecified derogatory references to [p]laintiff's impairments," that the defendant "imitated [p]laintiff's voice," or that the defendant "made derogatory statements about [p]laintiff's weight, do not rise to the level necessary to constitute a claim for intentional infliction of emotional distress").

Even if a jury could find that Defendants' conduct was outrageous, the record does not establish a genuine dispute of material fact that Plaintiffs suffered from severe emotional stress. Severe emotional distress requires Plaintiffs to show "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained

to do so." *Costin v. Ally Bank Corp.*, No. 7:13-CV-113-BO, 2014 WL 130527, at *3 (E.D.N.C. Jan. 13, 2014) (quoting *Waddle,* 414 S.E.2d at 27). "It is only where it is extreme that the liability arises." *Id.* "Where '[t]here is no forecast of any medical documentation of plaintiff's alleged "severe emotional distress" nor any other forecast of evidence of "severe and disabling" psychological problems . . . ,' a claim for intentional infliction of emotional distress fails." *Phifer v. City of Rocky Mount*, No. 5:08-CV-00292-FL, 2010 WL 3834565, at *12 (E.D.N.C. Aug. 12, 2010), *R. & R. adopted*, No. 5:08-CV-292-FL, 2010 WL 3860411 (E.D.N.C. Sept. 28, 2010) (quoting *Waddle*, 414 S.E.2d at 28).

Plaintiffs fail to make the requisite showing. In the Verified Complaint, Mr. Kesler swore that Plaintiffs suffered "night terrors, mental anguish, emotional distress, and overall pain and suffering" from the incident and relive the trauma whenever they pass the restaurant. (Doc. No. 1-1 at 5–6, 10). But the record contains no medical record, treatment history, diagnosis, or testimony describing any lasting effect. The record otherwise shows only that Ms. Kesler was upset and crying during the visit and that Plaintiffs felt embarrassed and humiliated. (Doc. No. 13-6 at 4; Doc. No. 1-1 at 5). That showing does not meet the standard for severe emotional distress. Further, Ms. Kesler did not verify the Complaint, and Mr. Kesler's verification does not describe anything he personally observed about her condition after the incident. Because neither Plaintiff has produced evidence from which a jury could find severe emotional distress, the IIED claims fail as to each Defendant.[7]

---

[7] Although the Court struck the ROG responses, Plaintiffs responded that they were not treated or examined for any psychological condition or physical injuries. (Doc. No.

### *3. Negligent Supervision*

"North Carolina recognizes a cause of action for negligent supervision and retention as an independent tort based on the employer's liability to third parties." *Douglas v. Crisco*, No. 1:24CV101, 2025 WL 2896634, at *13 (M.D.N.C. Oct. 10, 2025) (quoting *Smith v. Privette*, 495 S.E.2d 395, 398 (N.C. App. 1998)). To prevail on a negligent supervision claim, Plaintiffs "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith*, 495 S.E.2d at 398; *see Graham v. Hardee's Food Sys.*, 465 S.E.2d 558, 560 (N.C. App. 1996). A negligent supervision claim is derivative of a viable claim against an employee. *Racine v. City of Raleigh*, 872 S.E.2d 182 (table) (N.C. App. May 17, 2022) (citing *Prior v. Pruett*, 550 S.E.2d 166, 172–73 (N.C. App. 2001)). "In other words, North Carolina courts will not hold an employer vicariously liable unless an employee has committed a cognizable wrong against the plaintiff." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 774 (4th Cir. 1997).

Plaintiffs' claim fails for various reasons. First, the only predicate tort Plaintiffs identify is the emotional-distress claim, which fails for the reasons above. Thus, their negligent supervision claim likewise fails as a matter of law for failure to establish one of the prima facie elements. Further, the record contains no evidence that Midwest Waffles knew or should have known of any incompetence. In fact, Defendants' unrebutted investigation materials reflect that Defendants reviewed the

---

13-4 at 4). Likewise, they incurred no medical bills as a result of the incident. These ROG responses do not change the Court's analysis.

incident and determined no discriminatory service was found. Thus, summary is warranted on Plaintiffs' claim for negligent supervision. Because no claim survives, the request for punitive damages fails as well.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Strike (Doc. No. 12) is **GRANTED**;
2. Defendants' Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and
3. The Clerk is directed to close this case.

**SO ORDERED.**

Signed: September 30, 2026

Matthew E. Orso
United States District Judge